IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 5, 2007

Charles R. Fulbruge III
Clerk

No. 06-70027

DAVID LEONARD WOOD

Petitioner-Appellant

v.

NATHANIEL QUARTERMAN, DIRECTOR, TEXAS DEPARTMENT OF
CRIMINAL JUSTICE, CORRECTIONAL INSTITUTIONS DIVISION

Respondent-Appellee

Appeal from the United States District Court
for the Northern District of Texas

Before HIGGINBOTHAM, BENAVIDES, and DENNIS, Circuit Judges.

DENNIS, Circuit Judge:

This case involves an application for a certificate of appealability ("COA") filed by Petitioner David Leonard Wood ("Petitioner") to appeal the district court's denial of habeas corpus relief under 28 U.S.C. § 2254. Petitioner seeks a COA to appeal the denial of his claims that (1) the indictment was defective because it did not state a capital offense; (2) trial and appellate counsel provided ineffective assistance of counsel; and (3) the trial court erred in admitting evidence of an extraneous offense during the guilt phase of the trial. Because we conclude that Petitioner has failed to make a substantial showing of the denial of a constitutional right, we deny his application for a COA.

## I. BACKGROUND

The district court set forth the relevant facts as follows:

This case stems from the disappearances of six women from the El Paso, Texas area between May 13, 1987 and August 27, 1987. Between September 4, 1987 and March 14, 1988, the bodies of these women were found buried in shallow graves in the same desert area northeast of El Paso. Five of the bodies were located in the same one by one-half mile area; the sixth was three-quarters of a mile away. All of the bodies were approximately 30 to 40 yards from one of the dirt roadways in the desert. Four of the bodies were in various states of undress, indicating that the killer had sexually abused them. Five of the victims were seen by witnesses on the day of their disappearance accepting a ride from a man with either a red Harley-Davidson motorcycle or a beige pickup truck, matching the two vehicles owned by Petitioner. Petitioner's girlfriend testified that he owned a burnt orange blanket and some shovels, all of which he kept in the back of his pickup truck. A forensic chemist later testified at trial that orange fibers found on the clothing of one of the victims matched orange fibers taken from a vacuum cleaner bag which Petitioner and his girlfriend had left in their old apartment.

Petitioner's cell mate, Randy Wells, testified that Petitioner told him about the murders, describing his victims as topless dancers or prostitutes. Petitioner told him that he would lure each girl into his pickup truck with an offer of drugs, drive out to the desert, tie her to his truck, and dig a grave. Next, he would tie the victim to a tree and rape her. Another cell mate, James Carl Sweeney, Jr., testified at Petitioner's trial that Wood had shown him numerous clippings about the El Paso, Texas murders and had confessed to him that he was the one who had committed the murders.

The testimony of Judith Kelly ("Kelly") regarding an extraneous criminal offense committed by Petitioner played a crucial role at the guilt phase of the trial and in the opinion of the Court of Criminal Appeals. Kelly, a prostitute and heroin addict, testified that in July 1987 she had been walking outside of a convenience store in the northeast part of El Paso when a man identified as Wood, and matching his description, asked if she needed a ride. She accepted his offer but Wood did not take her home as directed. Instead, he stopped at an apartment complex and went inside. When he returned, a piece of rope was hanging from one of his pockets.

Petitioner drove northeast of town toward the desert, and after driving around the area for a period of time, stopped the truck, got out, and ordered Kelly out as well. She saw him get a "brownish red" blanket and shovel from the back of his truck. After tying her to the front of his truck with the rope, Petitioner proceeded to dig a hole behind some bushes. Ten or fifteen minutes later he returned with the blanket and began ripping her clothes and forcing her to the ground. Upon hearing voices, Petitioner ordered Kelly to get back in the truck. Wood drove to a different location in the desert where he stopped his truck again, ordered Kelly out, spread the blanket on the ground, and forced the victim to remove her clothes. He gagged her, tied her to a bush, and raped her. Immediately afterwards, Petitioner stated that he heard voices, and hastily threw his belongings back into the truck and drove away, leaving Kelly naked in the desert. His final words to her were, "Always remember, I'm free."

Wood v. Dretke, 2004 WL 1243169, **1-2 (N.D. Tex. Jun. 2, 2006).

On November 30, 1992, Petitioner was convicted by a jury of capital murder and was sentenced to death by lethal injection. He appealed his conviction and sentence to the Texas Court of Criminal Appeals ("TCCA"), which affirmed his conviction and death sentence in an unpublished opinion. See Wood v. State, No. 71,594 (Tex. Crim. App. Dec. 13, 1995). He then filed a state application for writ of habeas corpus on December 19, 1997. The TCCA denied relief in an unpublished order. See Ex Parte Wood, No. 45,746-01 (Tex. Crim. App. Sept. 19, 2001). On May 6, 2002, Petitioner filed an initial federal petition for writ of habeas corpus and an amended petition on October 2, 2002. In his amended petition, he argued, inter alia, that (1) his indictment was constitutionally defective, (2) trial and appellate counsel were ineffective by failing to object to the alleged technical defects in the indictment; and (3) the trial court erred in admitting evidence of an extraneous offense. The district court denied each claim on the merits and subsequently denied a COA. Petitioner filed a notice of appeal and the instant application for a COA.

## II. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a COA may not issue unless "the applicant has made a substantial showing of the denial of a constitutional right." Slack v. McDaniel, 529 U.S. 473, 483 (2000) (quoting 28 U.S.C. § 2253(c)). According to the Supreme Court, this requirement includes a showing that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" Id. at 483-84 (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). As the Supreme Court explained:

> The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits. We look to the District Court's application of AEDPA to petitioner's constitutional claims and ask whether that resolution was debatable amongst jurists of reason. This threshold inquiry does not require full consideration of the factual or legal bases adduced in support of the claims. In fact, the statute forbids it. When a court of appeals side steps this process by first deciding the merits of an appeal, and then justifying its denial of a COA based on its adjudication of the actual merits, it is in essence deciding an appeal without jurisdiction.

Miller-El v. Cockrell, 537 U.S. 322, 336-37 (2002).

In sum, Petitioner need not show that his habeas petition will ultimately prevail on the merits in order for this court to issue a COA. Id. at 337. In fact, the Supreme Court has specifically instructed that a court of appeals should not deny a COA simply because the petitioner has not demonstrated an entitlement to relief. Id. Instead, "where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Id. at 338 (citing Slack, 529 U.S. at 484).

For claims that were adjudicated on the merits in state court, deference to the state court's decision is required unless the adjudication was "contrary to, or involved an unreasonable application of, clearly establish Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); see also Ladd v. Cockrell, 311 F.3d 349, 357 (5th Cir. 2002).

## III.  ANALYSIS

## A.  Sufficiency of the Indictment Claim

The first issue raised by Petitioner is whether the indictment in this case is constitutionally defective.  This court has held that "[t]he sufficiency of a state indictment is not a matter of federal habeas relief unless it can be shown that the state indictment is so defective that it deprives the state court of jurisdiction." McKay v. Collins, 12 F.3d 66, 68 (5th Cir. 1994) (citation omitted); see also Yohey v. Collins, 985 F.2d 222, 229 (5th Cir. 1993); Alexander v. McCotter, 775 F.2d 595, 598 (5th Cir.1985).  That question is foreclosed to federal habeas review, however, if "the sufficiency of the [indictment] was squarely presented to the highest court of the state on appeal, and that court held that the trial court had jurisdiction over the case." Millard v. Lynaugh, 810 F.2d 1403, 1407 (5th Cir. 1987) (quoting Liner v. Phelps, 731 F.2d 1201, 1203 (5th Cir. 1984)).  Here, the sufficiency of the indictment was squarely presented to the TCCA, which adopted the state habeas court's express findings that the indictment was not fundamentally defective and that even if the indictment failed to allege a necessary element, it was still an indictment under state law.[1]

---

[1] The Texas Constitution provides that the "presentment of an indictment or information to a court invests the court with jurisdiction of the cause." Texas Constitution, Art. 5, § 12(b).  Based on this provision, Texas courts have held that "failure to include an essential element of the crime charged, which constitutes a defect of substance, does not deprive the trial court of jurisdiction." McKay, 12 F.3d at 69 (citing Studer v. Texas, 799

Because the sufficiency of the indictment was squarely presented to the highest state court and that court held that the trial court had jurisdiction over this case, this claim is foreclosed to federal habeas review. Millard, 810 F.2d at 1407 (quoting Liner, 731 F.2d at 1203).

Even if we were to reach this issue on the merits, we would find it beyond debate that Petitioner has failed to make a substantial showing of the denial of a constitutional right. Texas law defines murder as "intentionally or knowingly caus[ing] the death of an individual." Tex. Penal Code § 19.02(b)(1). A person commits capital murder if he or she "murders more than one person . . . during different criminal transactions but the murders are committed pursuant to the same scheme or course of conduct." Tex. Penal Code § 19.03(a)(7)(B). The indictment charges Petitioner with "unlawfully, intentionally and knowingly caus[ing] the death of more than one person, during different criminal transactions, pursuant to the same scheme and course of conduct." It then lists the six victims and the manner, if known, in which they were killed. We simply fail to see how the indictment is insufficient in charging Petitioner with capital murder. See McKay, 12 F.3d at 69 ("An indictment should be found sufficient unless no reasonable construction of the indictment would charge the offense for which the defendant has been convicted.") (citing United States v. Salinas, 956 F.2d 80, 82 (5th Cir.1992)). Accordingly, we conclude that it is beyond debate that Petitioner has not made a substantial showing of the denial of a constitutional right with respect to his sufficiency of the indictment claim.

### B. Ineffective Assistance of Counsel Claim

The second issue raised by Petitioner is whether trial and appellate counsel provided ineffective assistance by failing to object to the alleged technical defect in the indictment. Petitioner frames the issue as follows: "Did

---

S.W.2d 263 (Tex. Crim. App. 1990)).

Mr. Wood's trial and appellate counsel provide ineffective assistance within the meaning of Salinas v. State, 163 S.W.3d 734 (Tex. Crim. App. 2005)?" We first note that "federal habeas corpus relief does not lie for errors of state law." Estelle v. McGuire, 502 U.S. 62, 67 (1991) (quoting Lewis v. Jeffers, 497 U.S. 764, 780 (1990)). As the Supreme Court emphasized, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Id. at 67-68.

Assuming that Petitioner intended to raise a federal claim for ineffective assistance of counsel, the Supreme Court has set forth a familiar two-prong test for examining such claims:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

Strickland v. Washington, 466 U.S. 668, 687 (1984); see also Sonnier v. Quarterman, 476 F.3d 349, 356 (5th Cir. 2007).

This court has held, however, that "[f]ailure to raise meritless objections is not ineffective lawyering; it is the very opposite." Clark v. Collins, 19 F.3d 959, 966 (5th Cir. 1994); see also Koch v. Puckett, 907 F.2d 524, 527 (5th Cir. 1990) ("This Court has made clear that counsel is not required to make futile motions or objections."). Because we find that Petitioner's sufficiency of the indictment claim plainly lacks merit, the performance of his trial and appellate

counsel cannot be considered constitutionally deficient for failing to raise the same claim at trial and on appeal.[2]

## C. Due Process Claim

The third and final issue raised by Petitioner is whether the trial court erred in admitting evidence of an extraneous offense during the guilt phase of the trial. Although Petitioner alludes to a due process violation, his central argument is that the admission of Judith Kelly's testimony violated Texas law. "Such an inquiry, however, is no part of a federal court's habeas review of a state conviction." McGuire, 502 U.S. at 67; see also Derden v. McNeel, 978 F.2d 1453, 1458 (5th Cir. 1992) ("Errors of state law, including evidentiary errors, are not cognizable in habeas corpus."); Porter v. Estelle, 709 F.2d 944, 957 (5th Cir. 1983) ("We have repeatedly admonished that we do not sit as a super state supreme court on a habeas corpus proceeding to review error under state law.") (quoting Mendiola v. Estelle, 635 F.2d 487, 491 (5th Cir.1981)). Instead, the only relevant inquiry is whether the admission of this testimony violated Petitioner's federal constitutional rights. Id. Moreover, the TCCA has already held that the admission of this testimony was not erroneous under Texas law. The Supreme Court has "repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." Bradshaw v. Richey, 546 U.S. 74, 76 (2005) (citing McGuire, 502 U.S. at 67-68; Mullaney v. Wilbur, 421 U.S. 684, 691 (1975)). Thus, the issue of whether the admission of Kelly's testimony violated Texas law is simply not before us and has already been answered by the TCCA.

---

[2] We also note that trial counsel filed two motions to quash the indictment on the bases that it did not allege the cause of death of five of the victims and did not allege what different criminal transactions occurred or what acts constituted the same scheme or course of conduct. Trial counsel also filed a motion to dismiss the indictment on the basis that it did not define "criminal transactions" or "same scheme or course of conduct." Thus, we agree that trial counsel provided reasonably effective assistance of counsel by attacking the validity of the indictment on several grounds.

According to the Supreme Court, the admission of evidence may violate the Due Process Clause of the Fourteenth Amendment if the evidence is "so unduly prejudicial that it renders the trial fundamentally unfair." Payne v. Tennessee, 501 U.S. 808, 825 (1991) (citing Darden v. Wainwright, 477 U.S. 168, 179-83 (1986)); see also Porter, 709 F.2d at 957 (quoting Mendiola, 635 F.2d at 491). This court has stated that "[a]n extraneous offense may be admitted into evidence without violating the due process clause if the government makes a 'strong showing that the defendant committed the offense' and if the extraneous offense is 'rationally connected with the offense charged.'" Story v. Collins, 920 F.2d 1247, 1254 (5th Cir. 1991) (quoting Enriquez v. Procunier, 752 F.2d 111, 115 (5th Cir. 1984)). Still, "the erroneous admission of prejudicial evidence will justify habeas relief only if the admission was a crucial, highly significant factor in the defendant's conviction." Neal v. Cain, 141 F.3d 207, 214 (5th Cir. 1998). Finally, "[a]ssuming arguendo that the admission of [this evidence] was constitutional error, [the] claim still fails [if the petitioner] has not shown that the testimony had a 'substantial and injurious effect or influence in determining the jury's [] verdict.'" Janecka v. Cockrell, 301 F.3d 316, 328-29 (5th Cir. 2002) (quoting Brecht v. Abrahamson, 507 U.S. 619, 637 (1993)).

As previously noted, Judith Kelly, a prostitute and heroin addict, testified that she accepted a ride from Petitioner, but that he instead took her to the desert, tied her to his truck, and proceeded to dig a hole. She further testified that after hearing voices, Petitioner moved her to another location, gagged her, tied her to a bush, and raped her. In addressing the admissibility of this evidence, the TCCA found that Kelly's testimony tended to demonstrate that Petitioner had a unique system of committing criminal acts. The TCCA emphasized the striking similarities between the Kelly rape and the six murders, including the proximity of the found bodies to the area where Kelly was raped, the use of a beige truck to transport the victim, the evidence of sexual

9

abuse of the several victims, the use of a blanket and rope, and the fact that Petitioner dug a hole prior to raping Kelly. The TCCA also noted the similarities between the Kelly rape and testimony given by one of Petitioner's cell mates that Petitioner described all of his victims as topless dancers and prostitutes, that he would tie the women to his truck while he dug a grave and then tie them to a tree and rape them, and that he was worried about his tattoos because one girl had escaped. Finally, the TCCA held that any prejudicial effect of admitting the testimony did not substantially outweigh its probative value because identity was a hotly contested issue, the evidence that Petitioner raped Kelly was "unassailable," the evidence of rape was much less severe than the murders, the amount of time presenting the evidence was minimal in relation to the entire length of the trial, and the evidence was extremely important to the state's case.

Because the state has made a strong showing that Petitioner committed the extraneous offense -- Petitioner does not deny raping Kelly -- and because the extraneous offense is rationally connected to the offense charged, the admission of Kelly's testimony did not violate Petitioner's due process rights. Story, 920 F.2d at 1254 (quoting Enriquez, 752 F.2d at 115). Thus, we conclude that it is beyond debate that Petitioner has not made a substantial showing of the denial of a constitutional right with respect to his due process claim.

IV. CONCLUSION

For the foregoing reasons, the application for a COA is denied.