# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 7, 2025

Lyle W. Cayce
Clerk

No. 25-70004

DAVID WOOD,

*Plaintiff—Appellant*,

*versus*

RACHEL PATTON, *in her official capacity as Assistant Attorney General*,

*Defendant—Appellee*.

_____

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:24-CV-1058

_____

Before ELROD, *Chief Judge*, SMITH and ENGELHARDT, *Circuit Judges*.
JERRY E. SMITH, *Circuit Judge*:

David Wood brings this last-minute attempt to delay execution per his longstanding death sentence. In this 42 U.S.C. § 1983 suit, Wood asserts two claims that Texas's post-conviction DNA testing statute violates due process. The district court dismissed both claims and denied Wood's motion to stay his March 13, 2025, execution.

Wood lacks standing to bring his first claim, and the district court properly dismissed his second claim under Federal Rule of Civil Procedure 12(b)(6). Accordingly, we affirm the order and judgment of the district court

No. 25-70004

and deny Wood's renewed motion to stay his execution.

## I.

Wood was convicted of capital murder and sentenced to death in 1992 following the brutal murders of three young women and three teenaged girls in 1987. The victims—Ivy Williams, Desiree Wheatley, Karen Baker, Angelica Frausto, Rosa Maria Casio, and Dawn Smith—were found buried in shallow graves near El Paso, and the evidence indicated that Wood had sexually assaulted them before killing them.

Wood appealed to the Texas Court of Criminal Appeals ("CCA"), which affirmed the conviction and sentence. *Wood v. State*, No. AP-71,594 (Tex. Crim. App. Dec. 13, 1995). Wood has since pursued extensive litigation in state and federal court.[1] We briefly summarize the relevant procedural history.

In 2010, Wood filed his first motion for post-conviction forensic DNA testing under Chapter 64 of the Texas Code of Criminal Procedure. *See* Tex. Code Crim. Proc. art. 64.01 *et seq.* That law allows the convicting court to order DNA testing if the movant meets certain requirements.[2] The trial court granted Wood's uncontested motion to have three items tested for DNA evidence. Although the DNA testing showed the presence of male DNA from someone other than Wood on one piece of evidence, the trial

---

[1] *See, e.g.*, *Ex Parte Wood*, No. WR-45,746-01 (Tex. Crim. App. Sept. 19, 2001); *Wood v. Quarterman*, 503 F.3d 408 (5th Cir. 2007), *cert. denied*, 552 U.S. 1314 (2008); *In re Wood*, 648 F. App'x 388 (5th Cir. 2016) (per curiam); *Wood v. State*, 693 S.W.3d 308 (Tex. Crim. App. 2024), *reh'g denied* (Aug. 21, 2024), *cert. denied*, --- S. Ct. ----, 2025 WL 581671 (Feb. 24, 2025).

[2] For example, Chapter 64 requires, *inter alia*, that the evidence meets certain chain-of-custody parameters, that "identity was or is an issue in the case," and that "the request for the proposed DNA testing is not made to unreasonably delay the execution of sentence or administration of justice." Tex. Code Crim. Proc. art. 64.03(a)(1)–(2).

No. 25-70004

court concluded that the results failed to establish a reasonable probability that Wood would not have been convicted had the test results been available at trial.

Wood filed a second motion in 2011 seeking DNA testing of four fingernails. Later that same year, he submitted another motion for DNA testing of more than 69 previously untested items. Wood filed a follow-up motion in 2015 in which he sought testing of at least 39 items. Several months later, he filed yet another motion, this time for testing of biological samples to create a DNA profile of someone Wood calls an "alternative suspect." Wood filed a final motion for DNA testing in 2017 that listed 142 total items.

The trial court denied those requests, and the CCA affirmed in May 2024.[3] The CCA concluded that Wood had engaged in "a pattern of piecemeal litigation and delay." 693 S.W.3d at 340. The court thus held that Wood failed to meet his statutory "burden to show that his request for DNA testing has not been made to unreasonably delay the execution of sentence." *Id.*; *see* TEX. CODE CRIM. PROC. art. 64.03(a)(2)(B).

After losing his appeal in state court, Wood sued the state prosecutor[4] in federal court under 42 U.S.C. § 1983, alleging that the CCA's construction of Chapter 64 violates his procedural due process rights.[5] Wood asserts two

---

[3] *Wood v. State*, 693 S.W.3d 308 (Tex. Crim. App. 2024), *reh'g denied* (Aug. 21, 2024), *cert. denied*, --- S. Ct. ----, 2025 WL 581671 (Feb. 24, 2025).

[4] Defendant Rachel L. Patton, an Assistant Attorney General for Texas, is sued in her official capacity as District Attorney Pro Tem for El Paso County.

[5] *See Skinner v. Switzer*, 562 U.S. 521 (2011). Although the Supreme Court has "rejected the extension of substantive due process" to DNA testing, the Court has "left slim room for the prisoner to show that the governing state law denies him procedural due process." *Id.* at 525 (citing *Dist. Att'y's Off. for Third Jud. Dist. v. Osborne*, 557 U.S. 52, 71–72 (2009)). *Skinner* permits § 1983 suits that challenge the constitutionality of state statutes as "authoritatively construed" by the state's highest court. *Id.* at 531–37.

claims. First, he contends that the CCA's "authoritative construction" of Chapter 64 renders the state-created testing right "illusory" because the CCA has not granted DNA testing in any appeal decided in the last fifteen years. Second, Wood alleges that the CCA construed the statute's unreasonable-delay prong in a "novel" way, thus creating a new rule of which he lacked notice. Wood requests a declaratory judgment that Chapter 64 violates the Due Process Clause and a permanent and preliminary injunction prohibiting his execution until the state grants him a "constitutionally adequate opportunity to seek DNA testing."

The district court dismissed Wood's complaint under Rule 12(b)(6) and denied Wood's motion for a preliminary injunction to stay the execution. Wood timely appealed.

## II.

"We review questions of subject matter jurisdiction *de novo*." *Crockett v. R.J. Reynolds Tobacco Co.*, 436 F.3d 529, 531 (5th Cir. 2006) (quotation omitted). Likewise, we review a dismissal under Rule 12(b)(6) *de novo*. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008). "We review a district court's decision to deny a stay of execution for abuse of discretion." *United States v. Vialva*, 976 F.3d 458, 460 (5th Cir. 2020) (per curiam). "The party requesting a stay bears the burden of showing that the circumstances justify an exercise of [judicial] discretion." *Nken v. Holder*, 556 U.S. 418, 433–34 (2009).

Courts consider four factors when deciding whether to stay an execution:

> (1) [W]hether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties

interested in the proceeding; and (4) where the public interest lies.

*Id.* at 434 (quotation omitted). Where the movant cannot "present a substantial case on the merits," the stay of execution must be denied, and the court need not consider additional factors. *White v. Collins*, 959 F.2d 1319, 1322 (5th Cir. 1992) (quotations omitted).

## III.

Wood first claims that the CCA's authoritative construction of Chapter 64 violates procedural due process because that court has denied DNA testing in each of the twenty-three appeals it has heard in the past fifteen years.

We begin where Article III requires us to start: standing. To satisfy the "irreducible constitutional minimum of standing," a plaintiff must show that he has an injury in fact that is caused by the defendant and redressable by a favorable judgment of our court. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).

The state avers that Wood cannot satisfy the redressability prong of standing because a declaratory judgment would not get him the DNA testing he seeks. Wood contends that redressability is satisfied because a declaratory judgment would allow him to return to state court to seek DNA testing through a "constitutionally adequate" procedure.

The Supreme Court confronted a similar question in *Reed v. Goertz*, 598 U.S. 230 (2023). Like Wood, Reed "sued in federal court under 42 U.S.C. § 1983, asserting that Texas's post-conviction DNA testing law failed to provide procedural due process." *Id.* at 233.[6] The Court held that

_____

[6] Unlike Wood, Reed identified a specific way in which Chapter 64 allegedly violated the constitution: "Among other things, Reed argued that the law's stringent chain-

No. 25-70004

Reed had standing. "[I]f a federal court concludes that Texas's post-conviction DNA testing procedures violate due process, that court order would eliminate the state prosecutor's justification for denying DNA testing. It is 'substantially likely' that the state prosecutor would abide by such a court order." *Id.* at 234 (quoting *Utah v. Evans*, 536 U.S. 452, 464 (2002)). Thus, Reed demonstrated redressability because a favorable judgment would "significant[ly] increase . . . the likelihood that the state prosecutor would grant access to the requested evidence and that Reed therefore would obtain relief that directly redresses the injury suffered." *Id.* (quotations omitted).

We applied *Reed* in *Gutierrez v. Saenz*, 93 F.4th 267 (5th Cir.), *cert. granted*, 145 S. Ct. 118 (2024). Gutierrez challenged the same Texas DNA statute and sought a declaratory judgment that one of the testing-eligibility requirements violates the Constitution. We distinguished *Reed* and held that Gutierrez lacked standing because the CCA explicitly held that it would have denied DNA testing *even if* the challenged provision was not at issue. *Id.* at 273–75. Thus, Gutierrez could not establish redressability because a declaratory judgment would not make it substantially likely that the plaintiff could obtain DNA testing. *Id.* "Because there is not a substantial likelihood that a favorable ruling by a federal court on Gutierrez's claims would cause the prosecutor to order DNA testing, Gutierrez's claims are not redressable in this Section 1983 suit." *Id.* at 275.

Under *Gutierrez*, Wood cannot establish standing because it is not "substantially likely" that a favorable ruling from our court would cause the state prosecutor to change course and agree to DNA testing. Wood requests a declaratory judgment opining that the CCA's "authoritative construction"

_____

of-custody requirement was unconstitutional and in effect foreclosed DNA testing for individuals convicted before 'rules governing the State's handling and storage of evidence were put in place.'" *Id.*

6

No. 25-70004

of Chapter 64 flunks the Due Process Clause because that court "has denied every request for DNA testing that has come before it" in "the last fifteen years." The problem for Wood is that the CCA has denied DNA testing under the statute for a *multitude* of reasons.[7] Wood attempts to grasp at penumbras formed by emanations from those decisions, but he fails to allege *any particular* "authoritative construction" of Chapter 64 that violates due process. Thus, Wood's request for a vague declaratory judgment announcing that the CCA has "construed" Chapter 64 unconstitutionally would not apprise a state prosecutor (or the CCA) of which denials were unconstitutional and why.

In Wood's case, the CCA denied testing because he unreasonably delayed in seeking it.[8] A generalized declaratory judgment would not give the state prosecutor any justification to think that *that* ground for denial violates due process.[9] Thus, *Gutierrez* controls: The principle that "standing

---

[7] *See, e.g.*, *Skinner v. State*, 293 S.W.3d 196, 209 (Tex. Crim App. 2009) (denying post-conviction DNA testing because defense counsel made a "reasonable" decision to forgo testing at trial); *Ex parte Gutierrez*, 337 S.W.3d 883, 899–902 (Tex. Crim. App. 2011) (denying testing because movant did not establish "that he would not have been convicted if exculpatory results had been obtained through DNA testing"); *Wilson v. State*, 2012 WL 3206219, at *4 (Tex. Crim. App. Aug. 7, 2012) (denying testing because movant failed to "show that his claim ha[d] not been made to unreasonably delay the execution of his sentence"); *Reed v. State*, 541 S.W.3d 759, 769–70 (Tex. Crim. App. 2017) (denying DNA testing of evidence that had "been contaminated, tampered with, or altered"); *Murphy v. State*, 2023 WL 6241994, at *4 (Tex. Crim. App. Sept. 26, 2023) (denying testing of evidence that "was clearly not secured in relation to the capital murder offense").

[8] *Wood*, 693 S.W.3d at 340 (applying Tex. Code Crim. Proc. art. 64.03(a)–(2)(B), which disallows testing sought for the purpose of "unreasonably delay[ing] the execution of sentence or administration of justice").

[9] Indeed, the state prosecutor would have good reason to maintain that the "no-unreasonable-delay" requirement satisfies due process because the Supreme Court upheld a similar requirement in *Osborne*, 557 U.S. at 69–70 (upholding a state law requiring DNA evidence to be "diligently pursued").

requires that a prosecutor be *likely* to grant access to the requested evidence should a favorable federal court ruling be obtained cannot be satisfied on the facts of this case." *Gutierrez*, 93 F.4th at 275. Wood cannot establish redressability, so he lacks Article III standing. *Id.*

Although the Supreme Court has granted certiorari in *Gutierrez*, it remains binding under our rule of orderliness unless and until the Supreme Court holds differently. *Texas v. United States*, 126 F.4th 392, 406–07 (5th Cir. 2025). "This rule is strict and rigidly applied, and jurisdictional questions such as a panel's understanding of Article III standing remain binding." *Id.* at 406 (cleaned up). "[A] mere hint of how the Supreme Court might rule in the future" does not "permit a subsequent panel to depart from circuit precedent." *Id.* Thus, we apply *Gutierrez* and hold that Wood lacks standing as to his first claim.

## IV.

Wood's second claim asserts that the CCA authoritatively construed Chapter 64's unreasonable-delay provision in a novel and unforeseeable way, thus violating his procedural due process rights. *See* Tex. Code Crim. Proc. art. 64.03(a)(2)(B). Although Wood has standing to bring that claim, it is meritless, and the district court correctly dismissed it.

## A.

In contrast to his first claim, Wood's second claim satisfies Article III standing under the test in *Reed* and *Gutierrez*. The CCA's sole ground for denying Wood's motion for DNA testing was its interpretation of Chapter 64's unreasonable-delay provision. *See Wood*, 693 S.W.3d at 328–40; *contra Gutierrez*, 93 F.4th at 273. A declaratory judgment vitiating the CCA's construction of the unreasonable-delay provision "would eliminate the state prosecutor's justification for denying DNA testing." *Reed*, 598 U.S. at 234. Thus, "[i]t is 'substantially likely' that the state prosecutor would abide by

8

such a court order" and agree to grant DNA testing—the "'relief that directly redresses the injury suffered.'" *Id.* Wood has standing to bring his second claim.[10]

## B.

Wood avers that the CCA's construction of Article 64.03(a)(2)(B) violates the Due Process Clause as applied to him. Specifically, Wood contends that at the time when he sought DNA testing, the CCA had construed the unreasonable-delay provision in a "clear and consistent way": "If the individual seeking testing did not have an execution date (or was not on notice of the State's plan to seek one), particularly if other litigation remained pending, they were not found to have unreasonably delayed[.]" Wood sought testing with no execution date set and while litigation was ongoing, but the CCA nevertheless held that other factors showed that he had unreasonably delayed and was thus ineligible for DNA testing.[11] Wood claims that this allegedly new construction of Chapter 64 violates due process as applied to him because he could not have foreseen such a rule at the time he moved for DNA testing.

Even assuming that such a novel-construction theory could support a due process claim, Wood fails plausibly to allege any novel or unforeseeable construction of Chapter 64. First, the statute nowhere suggests that the pres-

---

[10] The *Rooker-Feldman* doctrine does not preclude our jurisdiction, either. *Rooker-Feldman* "prohibits federal courts from adjudicating cases brought by state-court losing parties challenging state-court judgments." *Reed*, 598 U.S. at 235. In contrast, "a 'statute or rule governing the decision may be challenged in a federal action.'" *Id.* (quoting *Skinner*, 562 U.S. at 532). Here, Wood does not challenge the adverse judgment of the CCA, "but rather 'targets as unconstitutional the Texas statute [the CCA] authoritatively construed.'" *Id.*

[11] *See Wood*, 693 S.W.3d at 329–40 (extensively detailing Wood's "pattern of piecemeal litigation and delay").

ence or absence of an execution date is a dispositive (or even key) factor in finding unreasonable delay. The statute permits testing "only if . . . the convicted person establishes by a preponderance of the evidence that . . . the request for the proposed DNA testing is not made to unreasonably delay the execution of sentence or administration of justice." TEX. CODE CRIM. PROC. art. 64.03(a)(2)(B).

Second, Wood insists that the CCA's decisions fit a pattern, but that does not prove his alleged rule. Indeed, the CCA has squarely held the *opposite* of what Wood now claims. In *Reed v. State*, the CCA held that "Article 64.03(a)(2)(B) does not contain set criteria a court must consider in deciding whether a movant satisfied his burden." 541 S.W.3d 759, 778 (Tex. Crim. App. 2017). Rather, the CCA considers "the circumstances surrounding the request" for DNA testing in an "inherently fact-specific and subjective inquiry." *Id.* "Those circumstances may include the promptness of the request, the temporal proximity between the request and the sentence's execution, or the ability to request the testing earlier." *Id.* Wood complains that *Reed* was decided after his motions for DNA testing. But he ignores the fact that *Reed* did not create a new rule; it restated the existing rule that "various opinions [have] flesh[ed] out." *Id.* (citing several cases decided *before* Wood sought DNA testing). Wood fails to state a plausible claim because the CCA did not construe Chapter 64 in a novel or unforeseeable manner.

\* \* \* \* \*

Wood lacks standing to bring his first claim, and his second claim is meritless. Both claims therefore were correctly dismissed, and Wood is not entitled to a stay of execution. *White*, 959 F.2d at 1322. The order and judgment are AFFIRMED, and Wood's renewed motion to stay his execution is DENIED. The mandate shall issue forthwith.