# United States Court of Appeals
# for the Fifth Circuit

————————

No. 25-70004

————————

David Wood,

Plaintiff—Appellant,

*versus*

Rachel Patton, *attorney pro tem, State of Texas*,

Defendant—Appellee.

———————————————————————

## ON REMAND FROM
## THE SUPREME COURT OF THE UNITED STATES

Before Elrod, *Chief Judge*, Smith and Engelhardt, *Circuit Judges*.

Jerry E. Smith, *Circuit Judge*:

Texas death row inmate David Wood brings two 42 U.S.C. § 1983 claims that Texas's post-conviction DNA testing statute violates due process. The district court dismissed both claims and we affirmed, holding that Wood lacked standing as to one claim and that the other failed on the merits.[1] The Supreme Court granted certiorari, vacated, and remanded for reconsid-

United States Court of Appeals
Fifth Circuit
**FILED**
August 6, 2025
Lyle W. Cayce
Clerk

———————————————

[1] *See Wood v. Patton*, 130 F.4th 516 (5th Cir. 2025), *vacated*, --- S. Ct. ----, 2025 WL 1787689 (June 30, 2025). We also denied Wood's motion to stay his execution, which had been scheduled for March 13, 2025. *See id.* The Texas Court of Criminal Appeals stayed the execution. *Ex parte Wood*, No. WR-45,746-04, 2025 WL 774937 (Tex. Crim. App. Mar. 11, 2025) (per curiam) (unpublished). Wood currently has no execution date set, and he does not renew his motion to stay.

No. 25-70004

eration in light of *Gutierrez v. Saenz*, 606 U.S. ----, 145 S. Ct. 2258 (2025). Having now concluded that Wood has standing to bring both claims, we affirm the dismissal under Federal Rule of Civil Procedure 12(b)(6).

I.

Wood was convicted of capital murder and sentenced to death in 1992 following the brutal murders of three young women and three teenaged girls in 1987. The victims were found buried in shallow graves, and the evidence indicated that Wood had sexually assaulted them before killing them.

Wood appealed to the Texas Court of Criminal Appeals ("CCA"), which affirmed the conviction and sentence. *Wood v. State*, No. AP-71,594 (Tex. Crim. App. Dec. 13, 1995) (unpublished). Wood has since pursued extensive litigation in state and federal court.[2] We briefly summarize the relevant procedural history.

In 2010, Wood filed his first motion for post-conviction forensic DNA testing under Texas Code of Criminal Procedure article 64.01 *et seq. Wood v. State*, 693 S.W.3d 308, 330 (Tex. Crim. App. 2024). That law allows the convicting court to order DNA testing if the movant meets certain requirements.[3] The trial court granted Wood's uncontested motion to have three items tested for DNA evidence. Although the tests showed the presence of male DNA from someone other than Wood on one piece of evidence, the

---

[2] *See, e.g.*, *Ex parte Wood*, No. WR-45,746-02, 2009 WL 10690712 (Tex. Crim. App. Aug. 19, 2009) (per curiam) (unpublished); *Wood v. Quarterman*, 503 F.3d 408 (5th Cir. 2007), *cert. denied*, 552 U.S. 1314 (2008); *In re Wood*, 648 F. App'x 388 (5th Cir. 2016) (per curiam); *Wood v. State*, 693 S.W.3d 308 (Tex. Crim. App. 2024), *reh'g denied* (Aug. 21, 2024), *cert. denied*, 145 S. Ct. 1183 (2025).

[3] For example, Chapter 64 requires, *inter alia*, that the evidence meets certain chain-of-custody parameters, that "identity was or is an issue in the case," and that "the request for the proposed DNA testing is not made to unreasonably delay the execution of sentence or administration of justice." Tex. Code Crim. Proc. art. 64.03(a)(1)–(2).

trial court concluded that the results failed to establish a reasonable probability that Wood would not have been convicted had the test results been available at trial.

Wood filed a second motion in 2011 seeking DNA testing of four fingernails. *Wood*, 693 S.W. at 330. Later that same year, he submitted another motion for DNA testing of more than 69 previously untested items. *Id.* at 331. He filed a follow-up motion in 2015 in which he sought testing of at least 39 items. *Id.* at 332. Several months later, he moved for testing of biological samples to create a DNA profile of someone he calls an "alternative suspect." *Id.* at 333. Wood filed a final motion for DNA testing in 2017 that listed 142 items. *Id.* at 335.

The trial court denied those requests, and the CCA affirmed in May 2024,[4] concluding that Wood had engaged in "a pattern of piecemeal litigation and delay." 693 S.W.3d at 340. The court thus held that Wood had failed to meet his statutory "burden to show that his request for DNA testing has not been made to unreasonably delay the execution of sentence." *Id.*; *see* Tex. Code Crim. Proc. art. 64.03(a)(2)(B).

After losing his appeal in state court, Wood sued the state prosecutor[5] in federal court under 42 U.S.C. § 1983, alleging that the CCA's construction of Chapter 64 violates his procedural due process rights.[6] Wood asserts

---

[4] *Wood v. State*, 693 S.W.3d 308 (Tex. Crim. App. 2024), *reh'g denied* (Aug. 21, 2024), *cert. denied*, 145 S. Ct. 1183 (2025).

[5] Defendant Rachel Patton, an Assistant Attorney General for Texas, is sued in her official capacity as District Attorney Pro Tem for El Paso County.

[6] *See Skinner v. Switzer*, 562 U.S. 521 (2011). Although the Supreme Court has "rejected the extension of substantive due process" to DNA testing, the Court has "left slim room for the prisoner to show that the governing state law denies him procedural due process." *Id.* at 525 (citing *Dist. Att'y's Off. for Third Jud. Dist. v. Osborne*, 557 U.S. 52, 71–72 (2009)). *Skinner* permits § 1983 suits that challenge the constitutionality of state

No. 25-70004

two claims.

First, Wood contends that the CCA's "authoritative construction" of Chapter 64 renders the state-created testing right "illusory" because the CCA has not granted DNA testing in any appeal decided in the last 15 years. Second, he posits that the CCA construed the statute's unreasonable-delay prong in a "novel" way, thus creating a new rule of which he lacked notice. Wood requests a declaratory judgment that Chapter 64 violates the Due Process Clause and a preliminary and permanent injunction prohibiting his execution until the state grants him a "constitutionally adequate opportunity to seek DNA testing."

The district court dismissed Wood's complaint under Rule 12(b)(6), and Wood timely appealed.

## II.

"We review questions of subject matter jurisdiction *de novo*." *Crockett v. R.J. Reynolds Tobacco Co.*, 436 F.3d 529, 531 (5th Cir. 2006) (quotation omitted). Likewise, we review a dismissal under Rule 12(b)(6) *de novo*. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff must plead facts that, taken as true, "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

## III.

Wood claims (1) the CCA's authoritative construction of Chapter 64 violates procedural due process because that court has denied DNA testing in each of the 23 appeals it has heard in the past 15 years; and (2) the CCA construed Chapter 64's unreasonable-delay provision in an unforeseeable

_____

statutes as "authoritatively construed" by the state's highest court. *Id.* at 531–37.

4

way, thus violating his right to procedural due process.

We begin where Article III requires us to start: standing. To satisfy the "irreducible constitutional minimum of standing," a plaintiff must show that he has an injury in fact that is caused by the defendant and redressable by a favorable judgment of our court. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). We previously held that Wood lacked standing to bring his first claim under *Gutierrez v. Saenz*, 93 F.4th 267 (5th Cir. 2024), but in *Gutierrez* the Supreme Court has since changed the standing analysis that we apply here.

The Court held in *Gutierrez* that *Reed v. Goertz*, 598 U.S. 230 (2023), provides the governing framework for standing. *Gutierrez*, 145 S. Ct. at 2262. Reed "sued in federal court under 42 U.S.C. § 1983, asserting that Texas's post-conviction DNA testing law failed to provide procedural due process." *Reed*, 598 U.S. at 233. The Court held that Reed had standing. "[I]f a federal court concludes that Texas's post-conviction DNA testing procedures violate due process, that court order would eliminate the state prosecutor's justification for denying DNA testing. It is 'substantially likely' that the state prosecutor would abide by such a court order." *Id.* at 234 (quoting *Utah v. Evans*, 536 U.S. 452, 464 (2002)). A favorable judgment would order "a change in a legal status, and the practical consequence of that change would amount to a significant increase in the likelihood that the state prosecutor would grant access to the requested evidence and that Reed therefore would obtain relief that directly redresses the injury suffered." *Id.* (quotations omitted).

In *Gutierrez*, the Court clarified that a § 1983 plaintiff has standing to sue the state prosecutor where his federal complaint challenges "the barrier [Chapter] 64 erects between [the plaintiff] and DNA testing." *Gutierrez*, 145 S. Ct. at 2267. The Court cautioned that *Reed* does not "transform[] the

redressability inquiry into a guess as to whether a favorable court decision will in fact ultimately cause the prosecutor to turn over the evidence." *Id.* at 2268. "That a prosecutor might eventually find another reason, grounded in [Chapter] 64 or elsewhere, to deny a prisoner's request for DNA testing does not vitiate his standing to argue that the cited reasons violated his rights under the Due Process Clause." *Id.*

Wood, like Gutierrez, has standing to bring both of his § 1983 claims because he "challenged, in his complaint, each of the roadblocks [Chapter] 64 placed between himself and DNA testing." *Id.* at 2267.[7] He "alleges that the [state] prosecutor's denial of his request for DNA testing deprived him of his liberty interests in utilizing state procedures to obtain an acquittal and/or reduction of his sentence, in violation of his right to due process of law." *Id.* at 2266 (quotation omitted). "The declaratory judgment [Wood] seeks would redress that injury by ordering a change in the legal status of the parties and eliminating the state prosecutor's allegedly unlawful justification for denying DNA testing." *Id.* (citation modified). Wood has Article III

---

[7] We previously characterized Wood's complaint as bringing two separate claims because it alleges two different ways that Chapter 64 violates his right to due process. *Wood v. Patton*, 130 F.4th at 520, 522. We note, however, that the Supreme Court's analysis in *Gutierrez* might suggest that a § 1983 challenge to "the barrier" that the DNA statute "erects between [the plaintiff] and DNA testing" should be construed as a single claim— even if it asserts multiple theories. *Gutierrez*, 145 S. Ct. at 2267; *see also id.* at 2264. That could be a meaningful distinction in other cases because "[s]tanding is not dispensed in gross," but rather on a claim-by-claim basis. *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) (quoting *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996)).

But Wood has standing under *Gutierrez* regardless of whether his complaint asserts two separate claims or, instead, a single claim with two theories. *See Gutierrez*, 145 S. Ct. at 2266–69 (finding standing where Section 1983 plaintiff took issue, on due process grounds, with "each of the roadblocks" that that law placed between him and DNA testing). Therefore, although we continue to denominate Wood's two theories as "claims" for the sake of consistency, we do not decide whether his complaint comprises one or two claims.

standing to assert both of his § 1983 claims, so we proceed to the merits.[8]

## IV.

Wood first brings a facial challenge that the CCA's "authoritative construction" of Chapter 64 violates due process because it operates as an "automatic barricade" to DNA testing under Chapter 64, "rendering that right illusory." Wood does not explain how the CCA has construed the statute, but he nonetheless insists that its construction makes the statute "illusory in practice" because that court "has denied every request for DNA testing that has come before it" in "the last fifteen years."

Although the Constitution does not confer "a freestanding right to DNA evidence," *Osborne*, 557 U.S. at 72, a "state-created right can, in some circumstances, beget yet other rights to procedures essential to the realization of the parent right," *id.* at 68 (quoting *Conn. Bd. of Pardons v. Dumschat*, 452 U.S. 458, 463 (1981)). When a state has opted to create a right to post-conviction DNA testing, the constitutional question is whether the state's procedure "'offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental,' or 'transgresses any recognized principle of fundamental fairness in operation.'" *Id.* at 69 (quoting *Medina v. California*, 505 U.S. 437, 446, 448 (1992)). "Federal courts may upset a State's postconviction relief procedures only if they are

---

[8] The *Rooker-Feldman* doctrine does not preclude our jurisdiction, either. *Rooker-Feldman* "prohibits federal courts from adjudicating cases brought by state-court losing parties challenging state-court judgments." *Reed*, 598 U.S. at 235. In contrast, "a 'statute or rule governing the decision may be challenged in a federal action.'" *Id.* (quoting *Skinner*, 562 U.S. at 532). Here, Wood does not challenge the adverse judgment of the CCA, "but rather 'targets as unconstitutional the Texas statute [the CCA] authoritatively construed.'" *Id.*

fundamentally inadequate to vindicate the substantive rights provided." *Id.*[9]

Assuming, *arguendo*, that a due process violation would occur if the CCA created an "automatic barricade" to the state-created testing right, Wood has failed to allege any facts showing that such a barrier exists. He merely asserts that the CCA has a "fifteen-year, unbroken string of denying DNA testing appeals" in twenty-three cases. But the CCA has denied testing for a multitude of reasons, construing various statutory requirements under Chapter 64.[10] Wood does not claim that any of the CCA's reasons in those cases flunk due process, nor does he explain how they make testing impossible under the statute. And Wood does not allege how the CCA's various stated reasons are evidence of some subterranean, unstated interpretation that blocks DNA testing.

The mere fact that the CCA has denied DNA testing in the appeals it adjudicated during Wood's selective timeframe does not show that that court has rendered the right an illusion.[11] Indeed, lower courts applying the

---

[9] *See also Skinner*, 562 U.S. at 525 (citations omitted) ("*Osborne* severely limits the federal action a state prisoner may bring for DNA testing. *Osborne* rejected the extension of substantive due process to this area and left slim room for the prisoner to show that the governing state law denies him procedural due process.").

[10] *See, e.g.*, *Skinner v. State*, 293 S.W.3d 196, 209 (Tex. Crim. App. 2009) (denying post-conviction DNA testing because defense counsel made a "reasonable" decision to forgo testing at trial); *Ex parte Gutierrez*, 337 S.W.3d 883, 899–902 (Tex. Crim. App. 2011) (denying testing because movant did not establish "that he would not have been convicted if exculpatory results had been obtained through DNA testing"); *Wilson v. State*, No. AP-76,835, 2012 WL 3206219, at *4 (Tex. Crim. App. Aug. 7, 2012) (per curiam) (unpublished) (denying testing because movant failed to "show that his claim ha[d] not been made to unreasonably delay the execution of his sentence"); *Reed v. State*, 541 S.W.3d 759, 769–70 (Tex. Crim. App. 2017) (denying DNA testing of evidence that had "been contaminated, tampered with, or altered"); *Murphy v. State*, No. AP-77,112, 2023 WL 6241994, at *4 (Tex. Crim. App. Sept. 26, 2023) (per curiam) (unpublished) (denying testing of evidence that "was clearly not secured in relation to the capital murder offense").

[11] Wood presumably focuses on the fifteen-year period preceding his complaint

No. 25-70004

CCA's construction of Chapter 64 *have* granted DNA testing during that period.[12]

At most, Wood's well-pleaded facts, taken as true, show a "sheer possibility" of unlawful conduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). But the federal pleading standard demands more. *Id.* Wood's complaint "stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly*, 550 U.S. at 557). We agree with the district court that Wood fails to state a claim on which relief can be granted.

V.

Wood's second claim asserts that the CCA authoritatively construed Chapter 64's unreasonable-delay provision in a novel and unforeseeable way, thus violating his procedural due process rights. *See* Tex. Code Crim. Proc. art. 64.03(a)(2)(B). We affirm the dismissal on the merits for the same reasons we elucidated in *Wood v. Patton*, 130 F.4th 516 (5th Cir. 2025).

Wood avers that the CCA's construction of Chapter 64.03(a)(2)(B) violates the Due Process Clause as applied to him. Specifically, Wood contends that at the time he sought DNA testing, the CCA had construed the unreasonable-delay provision in a "clear and consistent way": "If the indi-

_____

because he alleges that the CCA last granted DNA testing in 2009, citing *Esparza v. State*, 282 S.W.3d 913 (Tex. Crim. App. 2009).

[12] In Wood's own case, for example, the trial court granted his Chapter 64 motion for DNA testing in 2010. *See Wood v. Patton*, 693 S.W.3d at 330. *See also, e.g.*, *Cooper v. State*, 673 S.W.3d 724, 730–31 (Tex. App.—Fort Worth 2023, no pet.) (discussing results of DNA testing that the trial court granted in 2016 under Chapter 64); *Pruett v. State*, No. AP-77,065, 2017 WL 1245431, at *1–3 (Tex. Crim. App., Apr. 5, 2017) (unpublished) (discussing results of DNA testing that the trial court granted in 2013 and 2015 under Chapter 64); *State v. Long*, Nos. 10-14-00330-CR, 10-14-00331-CR, 10-14-00332-CR, 10-14-00333-CR, 2015 WL 2353017, at *1–2 (Tex. App.—Waco, May 14, 2015, no pet.) (unpublished) (addressing results of DNA testing that the trial court granted in 2012 under Chapter 64).

vidual seeking testing did not have an execution date (or was not on notice of the State's plan to seek one), particularly if other litigation remained pending, they were not found to have unreasonably delayed[.]" Wood sought testing with no execution date set and while litigation was ongoing, but the CCA nevertheless held that other factors showed that he had unreasonably delayed and was thus ineligible for DNA testing.[13] Wood claims that this alleged new construction of Chapter 64 violates due process as applied to him because he could not have foreseen such a rule at the time he moved for testing.

Even assuming that such a novel-construction theory could support a due process claim, Wood fails plausibly to allege any novel or unforeseeable construction of Chapter 64. First, the statute nowhere suggests that the presence or absence of an execution date is a dispositive (or even key) factor in finding unreasonable delay. The statute permits testing "only if . . . the convicted person establishes by a preponderance of the evidence that . . . the request for the proposed DNA testing is not made to unreasonably delay the execution of sentence or administration of justice." Tex. Code Crim. Proc. art. 64.03(a)(2)(B).

Second, Wood insists that the CCA's decisions fit a pattern, but that does not prove his alleged rule. Indeed, the CCA has squarely held the *opposite* of what Wood now claims. In *Reed v. State*, the CCA held that "Article 64.03(a)(2)(B) does not contain set criteria a court must consider in deciding whether a movant satisfied his burden." 541 S.W.3d 759, 778 (Tex. Crim. App. 2017). Rather, the CCA considers "the circumstances surrounding the request" for DNA testing in an "inherently fact-specific and subjective inquiry." *Id.* "Those circumstances may include the promptness of the

_____

[13] *See Wood*, 693 S.W.3d at 329–40 (extensively detailing Wood's "pattern of piecemeal litigation and delay").

No. 25-70004

request, the temporal proximity between the request and the sentence's execution, or the ability to request the testing earlier." *Id.* Wood complains that *Reed* was decided after his motions for DNA testing. But he ignores the fact that *Reed* did not create a new rule; it restated the existing rule that "various opinions [have] flesh[ed] out." *Id.* (citing several cases decided *before* Wood sought DNA testing). Wood fails to state a plausible claim because the CCA did not construe Chapter 64 in a novel or unforeseeable manner.

AFFIRMED.